DISCIPLINARY COUNSEL v. RAFIDI.

[Cite as *Disciplinary Counsel v. Rafidi*,
114 Ohio St.3d 336, 2007-Ohio-3674.]

(No. 2006–2334—Submitted February 14, 2007—Decided July 25, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Joseph F. Rafidi of Youngstown, Ohio, Attorney Registration No. 0073061, was admitted to the Ohio bar in 2000.

{¶ 2} On February 13, 2006, relator, Disciplinary Counsel, charged respondent in a two-count complaint with several violations of the Code of Professional Responsibility. Respondent answered the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in September 2006. The panel then prepared findings of fact, conclusions of law, and a recommendation, which the board adopted. The recommendation of the panel included the dismissal of the second count for relator's failure to prove the violations charged in that count by clear and convincing evidence.

## Misconduct

{¶ 3} In 2001, Charlton and Michelle Glenn retained respondent to represent them in a bankruptcy matter. Mrs. Glenn paid respondent $400 of respondent's quoted $800 fee. The Glenns did not pursue the bankruptcy further until October 2005, when the bankruptcy laws were about to change.

{¶ 4} In January 2003, Mr. Glenn's cousin, Richard North, was visiting from Georgia and stayed a few nights with the Glenns. On January 13, 2003, federal Drug Enforcement Agency ("DEA") agents came to the Glenns' home and told them that North had been arrested. The DEA asked for permission to search the house. The Glenns consented to the search, and agents found a single

marijuana cigar. A DEA agent asked Mr. Glenn to come in for an interview the next day, suggesting, "I would hate to add you to the drug cartel."

{¶ 5} DEA agents interviewed Mr. Glenn the next afternoon. During the interview, Mr. Glenn felt that the agents were trying to implicate him in North's criminal activities. Mr. Glenn ended the interview and decided to consult with counsel.

{¶ 6} The Glenns called respondent because he was the only attorney they knew. Respondent quoted a $500 fee but agreed to meet with the Glenns for $250. Mr. Glenn told respondent about the DEA's search of their home, his interview with DEA agents, and North's arrest. Respondent then asked the Glenns whether North had a lawyer. The Glenns did not know whether or not North had counsel, so they agreed to call North's wife. During the telephone call, respondent asked to speak with Mrs. North, and the Glenns overheard respondent ask Mrs. North if her husband had an attorney and if he could visit her husband in jail.

{¶ 7} According to the Glenns, respondent ended his conversation with Mrs. North and immediately went to the jail to meet with North. Before leaving, respondent told Mr. Glenn that it would be better if respondent represented both Glenn and North. Respondent also told the Glenns that he would find out about the DEA's interest in Mr. Glenn.

{¶ 8} Jail records show that respondent met with North on the evening of January 14, 2003. North testified that respondent offered to defend him on the federal drug-trafficking charges that he was facing. Respondent did not tell North that he was already representing Charlton Glenn. North retained respondent for a fee of $20,000. The next day, respondent and North executed a proffer agreement with the Department of Justice.

{¶ 9} Several days passed, and the Glenns did not hear from respondent. As a result, Mr. Glenn telephoned respondent, and during that call, respondent told Glenn that the DEA was not concerned with him and unless he heard otherwise, he should "just leave it alone." The Glenns never had any further discussion with respondent about the DEA matter. Sometime after this conversation, Mr. Glenn learned that respondent was representing North.

{¶ 10} Respondent testified that DEA agent J.T. Panezott had told respondent that Mr. Glenn was not a target of the DEA investigation following the search of Glenn's home. However, Panezott denied telling respondent that Glenn was no longer a suspect. Rather, Panezott testified that Glenn had remained a suspect even after the DEA's interview.[1]

---

1. Mr. Glenn was never charged with any crimes stemming from the DEA's investigation.

{¶ 11} The board found that respondent had violated DR 2–103(A) (barring a lawyer from recommending his services to a nonlawyer when the nonlawyer has not sought the lawyer's advice regarding employment of a lawyer), 5–105(A) (requiring an attorney to disclose potential conflicts of interest before accepting employment that is likely to compromise the attorney's independent judgment on a client's behalf), and 5–101(A) (requiring prior disclosure of financial or business interests that may affect the lawyer's professional judgment on behalf of a client).

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline.

{¶ 13} As aggravating factors, the board found, among other things, that respondent operated with a selfish or dishonest motive in trading on the family connection of Charlton Glenn to solicit Richard North as a client. Respondent ignored obligations to his client, Mr. Glenn, in order to be hired for a higher fee by North, and respondent overlooked his ethical obligation to disclose conflicts of interest before representing multiple clients.

{¶ 14} In addition, the board found that respondent's misconduct was aggravated by the vulnerability of his client North. The board noted that persons who are incarcerated on criminal charges have restricted access to legal representation and are vulnerable to overreaching and improper solicitation.

{¶ 15} In mitigation, the board noted the absence of a prior disciplinary history by respondent, his cooperation in the disciplinary process, and his character and reputation. The board also noted that respondent had competently represented North, who faced serious charges of distributing large amounts of cocaine. Respondent was able negotiate a plea for reduced charges, and North received a prison term significantly reduced largely through respondent's efforts.

{¶ 16} Relator recommended that respondent be suspended for two years, with six months stayed. Respondent recommended dismissal of all charges. The panel recommended that respondent be suspended from the practice of law for six months, with the entire six months stayed. The board adopted the panel's recommendation.

## Review

{¶ 17} Respondent does not challenge the board's findings of fact, conclusions of law, and recommended sanction.

{¶ 18} We have reviewed the board's record and its report, and we agree that respondent violated DR 2–103(A), 5–105(A), and 5–101(A). However, we reject the board's recommendation of a six-month suspension with the entire suspension stayed.

{¶ 19} Respondent violated DR 2–103(A) when he solicited North as a client via the Glenns and Mrs. North. Charlton Glenn had sought respondent's services with respect to potential federal drug charges, and respondent accepted fees from Glenn with respect to the DEA investigation. North was also a suspect in the same DEA investigation, and respondent actively solicited North as a client through Mr. Glenn's connection with North's wife.

{¶ 20} Respondent violated DR 5–105(A) by accepting Mr. Glenn's fee of $250 and agreeing to represent him during the DEA investigation and then also accepting fees from North to represent him in the same criminal matter. Glenn's and North's status as suspects in the same DEA investigation was likely to adversely affect respondent's professional judgment, since it posed an obvious conflict of interest because one suspect might implicate the other. Respondent had an obligation under DR 5–105(A) to fully disclose to Glenn and North his dual representation and to obtain the consent of both clients before accepting employment.

{¶ 21} Finally, respondent's actions in soliciting North were clearly motivated by his financial interest in a client who would generate a fee of $20,000 compared to the $250 that he had received from Glenn. DR 5–101(A) requires prior disclosure by an attorney of a financial or business interest that may affect the attorney's professional judgment on behalf of a client. Respondent, who was representing Glenn when he solicited North, did not disclose to Glenn that he was interested in North because North was a more lucrative client. And once respondent had secured North as a client, respondent focused his attention on North's case. Indeed, Glenn had to call respondent to find out whether he was still a suspect in the DEA investigation while respondent worked daily on North's case. Thus, we agree with the board that respondent violated DR 5–101(A).

{¶ 22} Respondent committed multiple ethical violations when he failed to disclose conflicts in his representation of two clients, and he took advantage of an incarcerated individual's vulnerability to further his own monetary self-interest. We find that these actions warrant a stricter sanction than the stayed suspension recommended by the board.

{¶ 23} Accordingly, respondent is hereby suspended from the practice of law for six months, with no time stayed. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

John B. Juhasz, for respondent.